When you're ready, Counselor. Good morning, Your Honors. May it please the Court. Doug Silverstein of Kesslick, Silverstein & Jacob on behalf of Appellant and Plaintiff Starla Rollins. We're here to ask the Court to reverse the District Court's grant of summary judgment in this case. Judge Reel issued an opinion where we had submitted substantial evidence that, from our perspective, certainly established a breach of the duty of fair representation. But as this Court knows, our only obligation in response to the motion for summary judgment was to raise a controverted issue of material fact. Were there cross motions for summary judgment, or was there only one motion? There was only one motion. There were not cross motions. Okay. So the issue here before this Court is whether the union exercised any discretion in declining to represent Ms. Rollins with respect to the 2007 agreement that had been reached that allowed her to bump back into her original clerk position in the event that the promotion that she had received was subject to elimination through a reduction in force. Counsel, would a trial be necessary on the issue of whether or not the documents, the e-mail seniority agreement, the collective bargain agreement, and the MOU, memorandum of understanding, to determine whether or not there's any inconsistencies between those three documents? Would a trial be needed on that point? Well, our contention is that all three documents, the 2007 agreement, the 2008 collective bargaining agreement, and the 2012 memorandum of understanding, are all valid, enforceable, and consistent. And the issue here, the Court excluded the 2007 agreement based on parole evidence holding that it had been superseded and was inadmissible or could not be considered based upon the fact that it preceded the collective bargaining agreement. But there are an abundance of triable issues of fact regarding whether that result was actually correct. And so we do believe that a trial is necessary on this issue. I might think that this could be resolved on summary judgment one way or the other. You might lose, but it doesn't seem to me that we've got a lot of he said, she says. Well, we do have a lot of evidence in the form of the specific language of the collective bargaining agreement that actually preserves agreements of the type that were this 2007 agreement preserving the seniority. Well, maybe I should make myself clear. In my view, if the e-mail chain that purports to give us this side agreement is entered, I think probably it's summary judgment one way or the other. Well, and perhaps. But that's not, I mean, I understand you've not made a motion for summary judgment. And perhaps plaintiff should have moved for summary judgment, but obviously that's water under the bridge at this point. All we're here now is whether or not there are triable issues that mean that this case should go to trial. I thought the close issue perhaps would have been on, I think your client said that her representative that was appointed to represent her never did tell her about this mediation offer, I believe.  But could that have been countered by the record in the sense that your client participated in these negotiations for the collective bargaining agreement, although I'm not too certain about the record in terms of the MOU? Right. And so it was the 2008 negotiation of the collective bargaining agreement, and it's in the record. My client was very active in the union and was a participant in those negotiations. Which came shortly, less than a year after the seniority agreement. That's true. But there's nothing to suggest or indicate, there's nothing in the collective bargaining agreement that indicates that it should usurp that agreement. In fact, the MCH biller position that was eliminated as part of the 2012 MOU is not a specific category of jobs that's actually listed in the collective bargaining agreement. So what we're getting into now, Your Honor, and thank you for raising it, is that in the context of ongoing negotiations and relations between management and the union over years and sometimes decades, there's a system of industrial justice that has evolved that allows for hundreds of side agreements that are never ultimately put into the collective bargaining agreement or memorialized or signed. I hate the term devil's advocate, but I can't think of anything else right now. So I'll say devil's advocate. Could the collective bargaining agreement in the context with that language says that other agreements by mutual agreement of the parties can be entered, couldn't that be taken in context of current as opposed to past situations? Not based on the language because the collective bargaining agreement specifically preserves a number of things, including side agreements. Every time a collective bargaining agreement is negotiated, in this case it was every four years, in some workplaces it's three years or five years or even longer, it doesn't mean that everything that has happened up to that point is suddenly wiped out because a new collective bargaining agreement is entered into. Oftentimes the collective bargaining agreements are virtually identical. The only area that's often changed is the wage scale. Sometimes there's a change in benefits, as we've seen in the last decade or so, because of the cost of those. But all of the other standards of collective bargaining agreements typically remain the same. And in fact, Article 3 of the 2008 collective bargaining agreement specifically had a standards preserved clause that prohibited members from suffering any reduction in wages, benefits, or other terms and conditions of employment, economic or otherwise, as a result of coverage under the CBA. There's also in the record the Borsos Declaration that Article 3 was specifically intended to preserve local agreements like Ms. Rollins' 2007 agreement. There's also evidence in the record that there were regularly side letters or agreements not expressly referenced by incorporation into the CBA. And it was both the hospital representative's testimony and the union's representative testimony that negotiated the 2007 agreement. I take it you would agree with me that if we were just talking about the CBA, and maybe this is more of a question for your opponent, if we were just talking about the collective bargaining agreement that was being negotiated and ultimately was in view of the RIF, reduction in force, if we were just talking about that and the seniority agreement, you might have a strong argument that there's no inconsistency between those two. But then when you incorporate the MOU, isn't that where the rubber hits the road, so to speak? So in direct response to your question, the MOU was the effectuation of the layoff. But the MOU is not inconsistent with and doesn't say anything about the ability to bump back into a position that had been previously negotiated. The MOU simply eliminated the MCH position. But Ms. Rollins already had an existence, an agreement, that allowed her to bump back into the ward position. So your understanding of the MOU is that it triggers the operation of the email agreement. Absolutely. In fact, it was the implementation of the reduction in force that made the effectuation of that earlier 2007 agreement necessary. It was just a document that existed up until that point as protection, which is the reason, it's one of the reasons that Ms. Rollins decided to accept this agreement because, or accept the position, because she didn't want to give up her 20-plus years of seniority in the position that she had. The new position was for more money. She was willing to take it, but only on the condition that if it allowed her to bump back into her former position so she could maintain her seniority in the event of a reduction in force. And there are numerous provisions throughout the collective bargaining agreement, and even in the effectuation of the MOU, that specifically provide for maintaining the employment of more senior employees. There's only four specific circumstances under the collective bargaining agreement that seniority can be taken away. And by not recognizing the 2007 agreement, the union created a fifth circumstance that is not allowed or not provided for by the collective bargaining agreement. But, Counselor, at the record, ER 1195-96, didn't it also include there being no bumping opportunity? The MOU. So for anyone that did not have a side agreement, that may be accurate, Your Honor, but we're not talking about some, that situation referred to just in generality. It did not include someone who had a specific express agreement that was not extinguished at any point in time. Help me out here. I've got the MOU in front of me. What language are we talking about? Let's take a look. I don't have that document in front of me, Your Honors. It's in the record. Yeah, it is. But you don't have it? I don't have it in front of me. Well, if the argument that you're trying to make is that the side agreement is not inconsistent with the MOU, I would expect you actually to have that document, the MOU, in front of you. But, okay. I understood, Your Honor. I guess I didn't read the MOU from my recollection, and I apologize, too. I don't, you know, I'm not all that good on memory sometimes. But my memory seems to suggest that there was no limitation of what no bumping opportunity meant. Well, in the context, there was nothing in the MOU to suggest that that language had anything to do with any prior agreements that were reached. There was no bumping opportunity means. So what that means is you can't bump in the position that you're in. There's no opportunity. This provided, the 2007 agreement provided Ms. Rollins the opportunity to revert back to a position that she previously held based on the expressed terms of the agreement. And if, in fact, there is any inconsistency between the MOU and the 2007 agreement, then that's a triable issue. That's something that needs to be determined by a jury. If there's any inconsistency whatsoever. Because then we would have two documents that supposedly say two different things. But they can be read consistently because the 2007 was a separate agreement. I realize you can't help me here, but I'm reading the MOU, and I'm trying to see the language that says no bumping opportunity, and I can't find it. It may be here, but I can't find it. Thanks. Maybe the other side can help me at some point. The other side is arguing that the MOU is inconsistent with the side agreement, so I guess they're going to tell me what the language is in the MOU. Why don't we hear from the other side, and then you've got some time to respond. Thank you so much. May it please the Court. My name is Monica Guisar. I represent SEIU, United Healthcare Workers West, the union appellee in this matter. Your Honors, when the facts are viewed in the light most favorable to the appellant, this Court must find that the district court properly granted some re-judgment in favor of the union. And the reason is, one, the appellant's employer complied with the clear provisions of the collective bargaining agreement when it laid off the appellant, and two, the union did not breach its duty of fair representation when it decided not to arbitrate the grievance protesting her layoff.  Your Honor, are we going to also hear from the hospital? How are we going to set up the argument? No, Your Honor, the hospital actually was dismissed in this action. The appellant settled with the hospital. Oh, I missed that. I thought we still had the hospital. No, just the union, Your Honor. Summary judgment was granted in favor of the union. And so either one of the findings by the district court alone warrant affirming summary judgment. And so as to the first issue, whether the collective bargaining agreement was breached, I want to just flush out the district court's ruling because I think it's a little confused in the appellant's opening brief. The court first ruled that the employer complied with the clear terms of the collective bargaining agreement in Article 14 that allowed the employer at any time during the life of the agreement to implement a reduction in force so long as it followed the process in Article 14, which required providing adequate notice to the union. And after providing adequate notice to the union, the parties could also negotiate into an alternative agreement regarding the implementation of a reduction in force if the parties believed that that was in the best interest of the collective. Let me cut to the chase, at least as far as what I think I'm going to be doing, and that is to say I think the fundamental issue here before we get to whether the union properly complied with its duty of fair representation is, is the side agreement valid? Because if the side agreement is inconsistent with and must be set aside because either because of the CBA or because of the MOU, you just win. So I'm trying to figure out, is the side agreement valid? So why is the side agreement, in your view, invalid? Actually, the district court found that the 2007 email agreement was an enforceable agreement. I know. So I'm asking you, in your view, why is it unenforceable? We did not appeal that finding of the judge's decision. So for our purposes here, we will accept the district court's finding that the 2007 email agreement was a valid agreement. Okay. The court then ruled if we apply the parole evidence rule, the email agreement is inconsistent with the clear terms of Article 14. Yeah, okay. In other words, it's invalid because we can't pay any attention to it because it varies from the clear terms of the CBA. Correct. So this is not you, but this is double talk as far as I'm concerned from the district judge. He's saying it's valid, but it's invalid. So tell me why it's invalid. Well, the reason why we believe it's invalid is because, first, presuming that it's valid, because that's what the court said, the 2007 email agreement, which essentially gave the appellant this protection of seniority rights, which nothing in labor law protects seniority rights. But for argument's sake, the 2007 email agreement was valid. What's inconsistent with that agreement is that when the subsequent CBA was negotiated in 2008, Article 14 was created in 2008, which called for a specific process with respect to a reduction in force. So an alternative agreement could be reached. No, you're losing me. Sure. So are you trying to tell me now why the site agreement is superseded by the collective bargain agreement? Correct, and why it's consistent. Okay. So point me then specifically to the language that you say supersedes it. Article 14. Okay. And I'm going to give me a record, give me ER sites. Sure. Appellant's excerpt of record at Volume 4, beginning at 0701, is where Article 14 begins. Yeah. So where in Article 14 does it say something that says that this site agreement is invalid? Well, it doesn't say that specifically, Your Honor. But your argument is that there's something in the CBA that says it's invalid, and I'm asking you to point me to the language that says that. Well, our position is that the site agreement in 2007, Article 14 allowed for alternative agreements. However, in order to even implement a reduction in force, the employer first had to comply with those notice agreements. So the 2007 site agreement. You're still losing me. Sure. Point me to the language in the CBA, whether it's in Article 14 or somewhere else, that says that the site agreement preserving her right to bump back is invalid. There's nothing in the collective bargaining agreement that states that specific statement, Your Honor. So what is there in this collective bargaining agreement? You just told me there's nothing in it that states that specifically. What is there in there that tells me that it's invalid? Well, first, Article 13 of the collective bargaining agreement at Appellant's Excerpt of Record, Volume 4, beginning at 0695. 0695. Okay. Hang on. Okay. I'm there. It lists how seniority and job vacancies is to be considered and how, under the collective bargaining agreement, seniority is to be evaluated. Yes. There's nothing in Article 13 that in any way describes these bumping rights or the special 2007 site agreement that protected those individual rights. But if I look at Article 14E. Yes. And I assume that this is more or less a continuation of language from an earlier upon mutual agreement, the union and the employer may agree on an alternative arrangement regarding reduction in force. And that seems to me describes the site agreement. It says, okay, if this job is eliminated, I get the bump back to the previous job I had for purposes of seniority. And that was, in her view, a necessary precondition for her being willing to take this position. That was in her ñ correct. That was in her view an alternative arrangement under Article 14E. Yes. So why is that ñ why doesn't that qualify under 14E? Well, even if it did, Your Honor ñ No. So I'm asking you, why doesn't it qualify? Do you say yes or no, it does or doesn't? Well, Your Honor, for purposes of our argument here, because the district court found that the agreement was valid, we can agree that that then could be an alternative arrangement under Article E of Article 14. But I will note for the record that there is evidence in the record that Article 14 was not part of a prior collective bargaining agreement. And so everything that is in Article 14 with respect to the implementation of reduction in force, with respect to the process, with respect to notice requirements, and with respect to alternative arrangements was negotiated in 2008. So when the reduction in force took place in 2012, the parties then entered into an alternative agreement with respect to that specific reduction in force in 2012. So when you say that, are you then talking about the MOU? Correct. So what is it in the MOU? Well, I think I'm hearing from you that so far as the CBA is concerned, that the side agreement is valid. And based on the district court's ruling. Okay. So that means if it's invalid, it's invalid because of the MOU. The MOU superseded it, correct. So what is it in the MOU that tells me that this is invalid? Well, the MOU specifically states, and that's at the Appellant's Excerpt of Record at page 1218, and I believe that's still Volume 4 of the Appellant's Excerpt of Record. The agreement specifically states that the parties have committed to a joint effort to ensure adherence to the collective bargaining language and smooth transition for these employees. So where are you reading from? I'm looking at the MOU. I'm reading from the first paragraph underneath the listing of departments, job classification, and full-time employees. The paragraph that begins, SCIU, da da da, and Community Service have committed to joint effort? Correct. Okay. So it's clear that the parties intended that this 2012 MOU was the intent of the parties in accordance with the collective bargaining agreement to decide this specific reduction in force in 2012. But where does it say in that MOU, Counsel, that a prior side agreement is invalid? Well, on the second page of the MOU at the end, the statement states, the current collective bargaining agreement. Okay, I'm on the second page now, but you have to go slowly for me. Thank you, Your Honor. What paragraph am I looking at? At the very last sentence under Section C. Okay, okay. Right after Section C, right above the signature line. Okay, so I'm looking at that line, so read that to me. The current collective bargaining agreement between the parties will govern aspects of this reduction in force. Will govern all aspects. Except as modified above. And what is it above that modifies and makes the side agreement invalid? First, that they identified, eventually 25 employees were impacted by the reduction in force. It identified by department and classification the employees that were going to be laid off. And second, it provided the employees the right to bid for open positions, if there were open positions within the hospital. And third, the parties negotiated for enhanced severance rights. Where does it negate, though? Where does it negate expressly or impliedly this prior right to a bump? I think the clear language of the reduction in force, that this is the party's agreement with respect to this reduction in force in 2012, except as modified by this agreement, negates any prior agreement with respect to the employees. Say that again. Or give me the language again, because I don't get it yet. Sure. The statement that says that the collective bargaining agreements between the parties will govern all aspects of this reduction in force, except as modified above. So let's presume for argument's sake that the 2007 e-mail agreement was somehow part of that CBA. This 2012 MOU supersedes both that 2007 e-mail agreement and the CBA. No, I got that. But then it says except as modified above, and I'm asking you to point me to the language above that paragraph that modifies or eliminates the site agreement. Are you interpreting the MOU to say because it only lists that employees will be provided the opportunity for a bidding opportunity, increased severance, and or training, and did not list bumping opportunities, that that impliedly forecloses bumping opportunities? Correct, and that was the union's interpretation of the MOU when it decided not to process the grievance. So even if the court were to assume that the union was wrong in how it interpreted the 2007 e-mail in conjunction with the 2008-2012 CBA, in conjunction with the 2012 MOU, we go back to the issue of the union's judgment and the union's discretion in interpreting the collective bargaining agreement. And this Court has never held where a union made an error, even when the union has made an error. The union has never found a breach of the duty of fair representation. That may or may not be a true assessment of what went on with respect to the union. My sense is that as this grievance goes forward, the site agreement is not included. I mean, there's all sorts of paper that's not being included at various points and so on. I mean, this may be a post-hack rationalization rather than what the union thought at the time. I actually can point to evidence in the record of when the union reviewed the 2007 e-mail agreement at each step of the process, and I can do that. For your honors, I know my time is almost up. But first of all, I'll refer the Court to the filing of the grievance. Well, first let's start with when the appellant is informed about the reduction in force. This is on October of 2012. The appellant informs the union representative about the 2007 e-mail agreement. Then in October of 2012, it's undisputed the union receives a copy of the 2007 e-mail agreement. And I'm only talking about the undisputed facts. On November 7th of 2012, the union timely files the grievance, and the union steward timely files that grievance. After speaking with the appellant about her specific situation, about her belief that she had these bumping rights in the event of a reduction in force, and she puts together the grievance. And when she filed the grievance, it's undisputed that the union steward testified that she believed the 2007 e-mail was an enforceable agreement. She believed that the grievance had merit. And this can be found at Volume 2 of the appellant's excerpt of record at 0381. The union steward also testified that she knew about the appellant's individual issues regarding her bumping rights when she filed the grievance, and that's at Volume 2 of the appellant's excerpt of record at 0387. The union steward in her grievance states in the statement of complaint, and the grievance is found at Volume 6, the appellant's of record 1206, that she believed the reduction in force was implemented incorrectly, that the settlement desired was to follow the collective bargaining agreement and make all affected whole in any and all ways. In her remarks, she states the reduction in force was not performed using departments as listed in Article 13. And attached to that grievance, she filed an information request, also undisputed. Her union steward asks for the process and results on Starla Rollins' reduction in force positions, the process and results on all clerical and clerk positions, the process and results on the reason not to accept the prior reduction in force arrangement for Starla Rollins. And that's found at the appellant's excerpt of record, Volume 6, 1228. So it's clear also that in December of 2012, after the grievance is timely filed, the union steward believes she has a meritorious grievance. My time is almost up. But in December of 2012, there is a grievance meeting held. And at the grievance meeting, it's undisputed by both the appellant and the union steward that the appellant talked about why she believed the grievance had merit and why she believed the contract was violated. The human resources director denied the grievance at that meeting in December of 2012, and that's where that statement comes about. This is a cut and paste. It can't be verified. It's undisputed both in the testimony of the appellant and the union steward that it was the HR representative who said that. Then moving on to the union. And does the union acquiesce in that statement? Does the union contest that and say, no, it's not cut and paste? No. The appellant and the union, the appellant states she doesn't recall what else was said in the meeting and she doesn't recall how the meeting ended. The union steward testified that the human resources person stated that the grievance was denied. Then after that grievance is denied, the union then conducts a separate review, and that review is conducted by the director of representational excellence. Okay. Yeah, you are over time. We can run through this and see what's on the record with respect to this. I have to say my own view is that the union really didn't do a very good job for her, whether it drives the level of failure to comply with duty of fair representation is another question. But, okay. Well, I know that I'm up, but I will admit that I will, in conclusion, just let the Court know that ultimately, at the end of the day, the union did process the grievance accordingly, did not do so in a perfunctory, arbitrary manner, and at the end of the day, we cannot substitute the court's judgment or the appellant's judgment for the union's judgment in determining whether or not the grievance had merit to the court. Yeah, and this question wasn't really decided by the district judge. Is that right? No, it was. Well, but the district judge says that the side agreement isn't valid. No, that's why I wanted to point to the district court's decision, and I know that I'm out of time if you would allow me to do so. The court first says it's excluded based on parole evidence versus a breach. Right. The court then says additionally, the court still considers the e-mail agreement in its decision in terms of the breach. The court says additionally, an individual contract that conflicts with the CBA must be superseded by the CBA, and he cites to Espinal versus Northwest Airlines, and that's at the appellant's excerpt of Record Volume 1, page 006. Then the court continues to address the substance of the e-mail agreement. The court says the substance of the plaintiff's e-mail agreement and the procedure by which it was entered into are inconsistent with the comprehensive and unambiguous terms of the MOU. The e-mails are therefore not part of the CBA, and no breach to the CBA is occurred.  with the comprehensive and unambiguous terms of the MOU. Let me ask you a question. Who drafted the order that the judge assigned? Our office did, but it's verbatim from the judge's minute order, which is also in the appellant's excerpt of Record Volume 1, Your Honor. Okay. And if I just may refer the court, then the judge says that the union did not breach its duty of fair representation, and in its analysis of the duty of fair representation, the court explicitly refers to the 2007 e-mail agreement. Okay. And that's in the appellant's excerpt of Record at page 007. So the court did not exclude it in terms of making its decision. Okay. Thank you. Your Honors, the issue is not the union steward's belief, but the union's knowledge and belief. And at the time the grievance was filed, the union refused to acknowledge the 2007 e-mail agreement because it said it was a cut-and-paste and unverifiable, and of course it did absolutely nothing to verify the agreement. In this case, we have submitted an abundance of evidence actually verifying the legitimacy of that agreement. Both parties to it, Ms. Sanchez and Ms. King, have submitted declarations. It was negotiated through their e-mails through both the union and the hospitals, and so all of it could have been obtained easily. It was also contained in the union's file. And because they did not believe that it was verifiable, they didn't provide it to the appeals board, they did not argue at the appeals hearing anything about it, and they lumped Ms. Rollins' grievance together with other employees that had been laid off as part of a class grievance, rather than addressing the individual merit of her specific case based on this agreement that allowed her to revert to her previous position so that her seniority would not be lost. Isn't the union's position regarding the seniority agreement was that it was, quote, not relevant to the MOU? Well, I heard their position, but I think it is highly relevant because it's not inconsistent with the terms of the MOU. It allowed her to have a specific agreement that the MOU then caused to come into play. That's really our position. It was the MOU that made the document relevant. It's the exact opposite, really. And again, it seems as if we seem to be heading to the, I guess everyone concedes perhaps, that the MOU states three criteria for the employees in a RIF. Absent from those three criteria is bumping opportunities. There's no language about that, correct? It's silent on that. Your position is that because it's silent and because Article 14, I believe, talks about other agreements that's possible, like a MOU, that the prior agreement, the seniority agreement, is still applicable. Exactly. Exactly, Your Honor. And I also want to point out that the argument that the union did analyze the 2007 agreement and found that it had been superseded by the collective bargaining agreement, that was never raised at any time until this litigation. It was an argument that was made in summary judgment. I also want to point out that the union argued that the standard of review is not de novo but abuse of discretion with respect to the court's ruling on the parole evidence. And I just wanted to point out to the court that that's not an evidentiary admission. The court viewed it as admissible evidence but then refused to consider it based on parole evidence. So that would also be based on a de novo standard. That's under the matter of law. Unless there's any other questions. I have one question that's not tied to this case. I've got another case argued to a different panel on which I sat several months ago in which your client is the named plaintiff, having to do with whether or not the retirement plan is a church plan. Do you know anything about that case or how she happens to be the plaintiff in two cases in front of me? I am not her attorney of record for that case. No, you're not. I know that she was very involved in union activities. And so I am aware that there is another case. But I did not know that Your Honor was actually involved in it. Well, I'm involved in the sense I was on the panel and the decision isn't out yet. But, yeah, yeah. Okay. Got it. Okay. It's totally irrelevant to this case. Okay. Thank both sides for their arguments. Thank you. The case of Rollins v. SEIU is now submitted for decision. And that completes our argument calendar for this morning. Thank you.
judges: W. Fletcher, Gould, Lemelle